IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JAIME PINILLOS,

    Petitioner,

        v.

UNITED STATES OF AMERICA,

    Respondent

CIVIL NO. 10-1698 (CC)
CRIMINAL NO. 01-0520 (CC)

OPINION AND ORDER

I. PROCEDURAL BACKGROUND

Petitioner was indicted on July 21, 2001 in a two-count indictment. Two other defendants were also indicted. As a target in a reverse sting operation[1] guided by law-enforcement officers, petitioner was charged in the first count with conspiring to possess with intent to distribute five kilograms or more of cocaine, a Schedule II Narcotic Drug Controlled Substance, all in violation of 21 U.S.C. § 846. Count Two charged the defendants with aiding and abetting each other in the attempt to possess with intent to distribute five or more kilograms of cocaine, in violation of Title 18 U.S.C. § 2(a) and 21 U.S.C. § 841(a)(1). (Criminal No. 01-0520 (CC), Docket No. 10). United States v. Pinillos-Prieto, 419 F.3d 61, 66 (1st Cir. 2005).

---

[1]See United States v. Pinillos-Prieto, 419 F.3d 61, 64 (1st Cir. 2005) ("In a reverse sting operation, government agents offer to sell drugs to persons suspected of being drug *buyers*").

1

CIVIL NO. 10-1698 (CC)
CRIMINAL NO. 01-520 (CC)

All defendants proceeded to trial and were found guilty on October 25, 2002. (Criminal No. 01-0520 (CC), Docket Nos. 171-76). Petitioner was sentence on March 26, 2003 to a term of 235 months imprisonment.[2] (Criminal No. 01-0520 (CC), Docket No. 237). A notice of appeal was filed on the same date. (Criminal 01-0520, Docket No. 240.) On August 17, 2005, the United States Court of Appeals for the First Circuit affirmed the conviction but remanded for re-sentencing in light of United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005). United States v. Pinillos-Prieto, 419 F.3d at 75. Petitioner was re-sentenced on August 13, 2007 to the same term of imprisonment of 235 months. (Criminal No. 01-0520 (CC), Docket No. 454). Petitioner again appealed and the court of appeals affirmed the judgment of the district court on February 13, 2009. United States v. Campusano, 556 F.3d 36 (1st Cir. 2009).

Petitioner timely filed a motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. Petitioner argues in a 41-page memorandum of law (accompanied by almost 200 pages of exhibits) that he was denied effective assistance of counsel by Assistant Federal Public Defender Joannie Plaza-Martinez and Ramon Garcia-Garcia at the trial and re-sentencing stages, and by attorney Jean Philip Gauthier at the appellate level. Counsel are generally attributed poor performance and clear errors

---

[2]The sentences of the other two defendants were 235 and 360 months imprisonment. (Criminal No. 01-0520 (CC), Docket Nos. 238, 245).

CIVIL NO. 10-1698 (CC)
CRIMINAL NO. 01-520 (CC)

including ignoring Fourth Amendment violations[3], but there is also an allegation of prosecutorial misconduct in the way of doctored exhibits and missing exculpatory evidence.  Other issues are also raised such as the failure to prepare for trial adequately, to consult with petitioner as to strategies and exculpatory evidence, and the failure to seek downward departure for substantial assistance, including minor/minimum role issues. (Docket No. 1-1 at 3).  Petitioner also complains that he would have had the opportunity to accept a 48-month imprisonment term with safety valve, U.S.S.G. § 5C1.1, but lost such opportunity thanks to counsel Plaza's inaction.  Counsel Plaza is also charged with not having visited petitioner at the Metropolitan Detention Center where petitioner was detained pending trial.  He states that he sent her requests to suppress evidence, to produce audiotapes, especially tapes lettered N-1 and N-2 (Trial Exhibits 6 and 7), including transcripts, to see if they had been edited. (Docket No. 1-1 at 4-5).  He also instructed counsel to get all the information she could on DEA cooperating witnesses Nelson ("Rafa") Rodriguez and Natalia Posada, both Colombian nationals.  A motion to sever trials was also urged on counsel because of, among other reasons, the coattail effect of the third defendant's conviction record.  Petitioner seeks an evidentiary hearing where the prejudice caused

---

[3]The issue of the legality of the audio recordings was raised by a co-defendant but adopted by petitioner and the other defendant.  The question to be answered was whether the cooperating witness was authorized to record the conversations with the defendants.  See 18 U.S.C. § 2511(2)(c). (Criminal No. 01-0520 (CC), Docket No. 77).

3

CIVIL NO. 10-1698 (CC)
CRIMINAL NO. 01-520 (CC)

by his trial counsel can be shown, and also seeks a new trial. Petitioner further requests that the court find that appellate counsel erred in not raising the non-frivolous issues which petitioner had asked him to raise. The motion was opposed by the United States and the matter is now pending resolution. (Docket No. 4).

This matter is before the court on petitioner's motion for production of specific *Brady*[4] exculpatory evidence pursuant to Rule 6(b) of the Rules Governing Section 2255 Proceedings filed by petitioner, pro se. (Docket No. 10). Specifically, petitioner alleges that the transcripts used at trial related to voices in audiotapes were inaccurate. He notes that if he could find the original audiotape, referred to as Exhibit N-2, he would show to the court what was actually said. For example, where the audiotape transcript states: ". . .If your friends don't trust you and, and (UI) we start, we start bad, bro'. That they stole from me six [6] one [1]. There's my kilo. You have, I (UI) all my things." (Docket No. 10 at 4), petitioner notes that he never stated said phrase as quoted. He would show the court that he said: "You stay with someone if your friend does not trust in you, if your friend does not trust in you, and, and . . .really look in case we begin, we begin badly brother, they stolen it, if one, there my cousin (primo) is there. My cousin (primo) is there. You have, I gave you all my names, all my things . . ." Petitioner specifically requests copy of (I) the first discovery package before trial, containing 12 audio or video tapes, copies of (II) the second

---

[4]Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963).

4

CIVIL NO. 10-1698 (CC)
CRIMINAL NO. 01-520 (CC)

discovery package presented during trial containing originals and copies of audio and videotapes.[5] He also requests a copy of sundry materials, that is, a summary of phone calls of Nelson ("Rafa") Rodriguez, a DEA Form 284 prepared on or before July 5, 2001, DEA Authorization for Use and Report for Use of Consensual Eavesdropping and/or CC TV Equipment to CS-Natalia Posada on or before July 5, 2001. (Docket No. 10 at 5). Other items requested are DEA Authorization for recording phone conversations by C.I. Nelson Rodriguez, "DEA Authorization for this case in Miami", DEA Authorization for Recording on site by C.I. Rodriguez, Chain of custody of items (I) and (II). (Evidence). He seeks transcripts of Exhibit N-8, copy of agreement signed by DEA Puerto Rico and C.I. Rodriguez 2000-2001, Memorandum Authorization of the Case Initiation signed by SAC Larry Sawyer, and finally copies of DEA Form signed by C.I. Nelson Rodriguez and Natalia Posada in 2001. (Docket No. 10 at 5-6).

Petitioner wishes to prove that he never had the opportunity under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963) to see and listen to the audio and video cassettes provided by the government and make transcripts of each one and

---

[5]On January 31, 2002, then U.S. Magistrate Judge Aida Delgado-Colon urged the parties to reach agreement as to the audibility of audio recordings N-3, N-3A, N-4 and N-5 so as to limit the issue related to recordings N-1 and N-2. (Criminal No. 01-0520 (CC), Docket No. 62). The government decided not to use these tapes, except for recordings N-1 and N-2, and thus no *Carbone* hearing was deemed necessary, rendering the related suppression issue moot. (Criminal No. 01-0520 (CC), Docket Nos. 69, 70). See United States v. Carbone, 798 F.2d 21, 24 (1st Cir. 1986), cited in United States v. Jadusingh, 12 F.3d 1162, 1167 (1st Cir. 1994).

CIVIL NO. 10-1698 (CC)
CRIMINAL NO. 01-520 (CC)

corroborate the original with the copies provided by the government before or during trial. He makes reference to more than 200 pages of transcripts of audiotapes N-1 and N-2. While a hearing was held, petitioner argues that his attorney was incompetent and unprofessional during the same and was of no help. The government witnesses arguably had the opportunity to listen to the recordings before and during trial, and to review the transcripts prior to trial, but he did not. Defense counsel did not object to the accuracy of the transcripts for tapes N-1 and N-2.[6] Petitioner counsel did ask the court for time to compare the original and draft of the transcripts. Petitioner informed counsel of at least 200 discrepancies made by Ms. Neri Golden and Ms. Gladys Rivera by Bonafide and Certified Co. Both have substantial differences according to petitioner.[7] Defense counsel did not object, thus arguably violating petitioner's right to Due Process.[8] Counsel is accused of knowing of the false transcripts used by the prosecutors, which transcripts contained the words kilo and cocaine, which words were

---

[6] Tape N-2 is described as a blank tape. (Docket No. 10-1).

[7] Exhibit tapes N-3 and N-5 were described as quite awful. (Docket No. 10-2, 10-5). Audiotape N-3A has little to understand and the voices could not be identified. (Docket No. 10-3). Audiotape N-4 has someone talking but nothing is understood. (Docket No. 10-4). There was a general concern with the accuracy and consistency of transcripts and translations prepared by different court interpreters. (Docket No. 10- 6).

[8] On August 13, 2007, at the re-sentencing hearing, defense counsel asked the court to listen to audiotape N-2 used in trial as evidence (almost five years before), focusing on constitutional violations. The request to listen to the tape was denied.

6

CIVIL NO. 10-1698 (CC)
CRIMINAL NO. 01-520 (CC)

never used.[9]  Petitioner also alleges that audiotape N-2 was tampered with and that no "illegal" words were used.  It is argued that a videotape was played without sound because the sound contained exculpatory material.

The court of appeals noted that during recorded telephone conversations, the informant Rafa and petitioner did not use the terms "cocaine" or "kilos" but rather used the terms "laptops" and "computers", which Rafa later testified were code words designed to obscure their conversation in case law enforcement officers overheard them.  United States v. Pinillos-Prieto, 419 F.3d at 64. (Docket No. 10-6 at 48, 52).

II.  LEGAL STANDARD FOR DISCOVERY IN 28 U.S.C. § 2255 PROCEEDINGS

A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."  Bracy v. Gramley, 520 U.S. 904, 117 S. Ct. 1793; United States v. Swisher, 272 F.R.D. 553, 555 (D. Idaho 2011).  Rule 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, states that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." Generalized statements regarding the possibility

---

[9]This statement is at loggerheads with the record which reflects that neither petitioner nor the informant used the words kilos or cocaine but rather laptops and computers. See United States v. Pinillos-Prieto, 419 F.3d at 64.  Then again, petitioner was confronted with a transcript of a telephone conversation (Exhibit No. 7) where the words kilo and cocaine appear, and denied having said those words.

7

CIVIL NO. 10-1698 (CC)
CRIMINAL NO. 01-520 (CC)

of the existence of discoverable material will not be sufficient to establish the requisite "good cause". Pizzuti v. United States, 809 F. Supp. 2d 164, 175-76 (S.D.N.Y. 2011). In fact, the Supreme Court has explicitly rejected Brady's applicability to postconviction proceedings. In District Attorney's Office for the Third Judicial Dist. V. Osborne, 557 U.S. 52, 129 S. Ct. 2308 (2009), the Court noted that '[a] criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man". Id. at 68, 129 S.Ct. at 2320, cited in Tevlin v. Spencer, 621 F.3d 59, 70 (1st Cir. 2010)(state conviction).

A traditional *Brady* claim is raised when it is argued that the government has failed to disclose evidence that was available to the government and material to guilt or sentencing. See Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194; Kiley v. United States, 260 F. Supp. 2d 248, 260 (D. Ma. 2003). Because petitioner is clearly aware of the existence of the material evidence he now requests, the requests fall more under *Brady* than under traditional discovery related to the unknown, except for the possible existence of a transcript which would reflect his version of the truth rather than another version presented at trial and considered by the court of appeals at the first oral argument. But assuming that the government has preserved a first draft transcript which contains words other than kilo and cocaine, not only did petitioner deny that he used the words kilo and cocaine, he presented an explanation that he was buying laptops or computers, moving from bakery, to shopping center, to parking lot,

8

CIVIL NO. 10-1698 (CC)
CRIMINAL NO. 01-520 (CC)

in unlikely and unorthodox settings to the point where a finding of perjury was made and affirmed on appeal. Whatever weight petitioner may attribute to a possible faulty or fraudulent draft transcript is lost in the cryptic or coded language of narcotics traffickers which is commonplace in their negotiations. See e.g. United States v. Diaz-Arias, 2013 WL 1798342 (1st Cir., Apr. 29, 2013) at *15; United States v. Valdivia, 680 F.3d 33, 56 n.16 (1st Cir. 2012); Porcaro v. United States, 832 F.2d 208, 211 (1st Cir. 1987).

The conviction which petitioner now collaterally attacks did not revolve around the arguably improperly conducted impeachment. There was other evidence of guilt and petitioner was able to present his own version explaining his innocence to the jury. United States v. Pinillos, 2007 WL 1241228 at 1-2; see Giglio v United States, 405 U.S. 150, 153-54, 92 S.Ct. 763 (1972), quoting United States v. Keogh, 391 F.2d 138. 148 (2d Cir. 1968). The jury was able to weigh the uniformly exculpatory testimonies of defendants against the also uniform testimonies of two informants cooperating with law enforcement authorities as well as that of an undercover law enforcement officer.

Petitioner not only was given an opportunity to raise the errors he now alleges existed in the wording of the audio aides used by the court and jury, as well as the accuracy of the tapes and transcripts used at trial, but he testified at trial presenting a version of the truth that was considered so incredible by the court that he was awarded an obstruction of justice enhancement. See United States v. Pinillos, 2007

9

CIVIL NO. 10-1698 (CC)
CRIMINAL NO. 01-520 (CC)

WL 1241228 (D.P.R., May 3d, 2007). Furthermore, the court of appeals subsequently placed its imprimatur on the sentencing enhancement, this after considering petitioner's first argument on appeal, that the parties never mentioned "cocaine" or "kilos" but were rather negotiating for the sale of computers. United States v. Pinillos-Prieto, 419 F.3d at 67. The court noted that both Rafa and Toro, an undercover agent, testified extensively on the use of code words in drug transactions. The court also noted the impeachment with the transcript the accuracy of which is attacked here. But petitioner denied he said kilo or cocaine and elaborated no further. Id. at 68. Thus the dearth of probative value and materiality of the supposed *Brady* material he now seeks for further re-sentencing. The linchpin of the need for the long list of discovery is the prosecutor's use of the arguably inaccurate transcript to impeach petitioner at trial. However, the portent of an explainable impeachment is diminished by the ability of petitioner to have explained his version of the truth to the jury. (See e.g. Docket No. 10-6 at 63-64)(". . .the transcript is not exactly in the intonation of what I'm really wishing to say or that I'm saying. And it doesn't show the conversation regarding the reality of what I'm talking about over the phone."). That version was that petitioner was present to broker a computer sale. United States v. Pinillos-Prieto, 419 F.3d at 66. On the other hand, the clearly evident goal of the meetings was petitioner's desire to broker a 100-kilogram deal. See United States v. Campusano, 556 F.3d at 40.

Under the circumstances, the discovery of possible errors in any original N-2

CIVIL NO. 10-1698 (CC)
CRIMINAL NO. 01-520 (CC)

transcript is immaterial when compared to the rest of the evidence of guilt, the coded language, the credibility of the law enforcement officers, and the scenarios described by petitioner and co-defendants rejected by judge, jury and appellate court. The information sought must be material, and it is material "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." Murray v. United States, 704 F.3d 23, 30 (1st Cir. 2013), quoting Smith v. Cain, ___U.S.___, 132 S.Ct. 627 (2012), which in turn quotes Cone v. Bell, 556 U.S. 449, 470, 129 S. Ct. 1769 (2009). That reasonable probability is missing in the trial scenario. Furthermore, the additional *Brady* discovery petitioner seeks results in a melding of a do over with a fishing expedition. For example, the need for documentary authorization of the cooperating informants is excess, considering the contemporaneous participation of a law enforcement agent during the negotiations with petitioner.

### III. CONCLUSION

The "confidence in the outcome of the trial" has not been undermined by the cross-examination of the prosecutor in relation to the non-coded terminology. See e.g. Moreno-Morales v. United States, 334 F.3d 140, 145-46 (1st Cir. 2003), quoting United States v. Bagley, 473 U.S. 667, 678, 105 S. Ct. 3375 (1985)[10]. A similar conclusion

---

[10] "The Supreme Court has equated 'reasonable probability' with something sufficient to 'undermine [ ] confidence in the outcome of the trial.'" Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555 (1995)(internal

CIVIL NO. 10-1698 (CC)
CRIMINAL NO. 01-520 (CC)

results from the knowledge that the tapes were of poor quality. See note 7, supra. Therefore there is no "good cause" for the specific *Brady* exculpatory evidence discovery under Rule 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, since, at best, an N-2 transcript not containing cocaine and kilo would yet reveal continued coding or innocuous language, this assuming the facts as alleged by petitioner. See e.g. Ferreiras v. United States, 895 F. Supp. 2d 504, 512-13 (E.D.N.Y. 2012).

In view of the above, and for the reasons stated, the motion for specific *Brady* exculpatory evidence is DENIED.
 SO ORDERED.

In San Juan, Puerto Rico, this 29th of May, 2013.

S/ JUSTO ARENAS
UNITED STATES MAGISTRATE JUDGE

---

quotation omitted)." United States v. Mathur, 624 F.3d 498, 504 (1st Cir. 2010).